IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **MERIDIAN WASTE VIRGINIA, LLC.,** | ) | |
| **d/b/a MERIDIAN WASTE SOLUTIONS;** | ) | |
| **MERIDIAN WASTE—BLUE RIDGE** | ) | |
| **HAULING & MRF,** | ) | |
| | ) | Civil Action No. 7:23-cv-00327 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **PULASKI SERVICE AUTHORITY[1],** | ) | |
| | ) | |
| and | ) | By: Hon. Robert S. Ballou |
| | ) | United States District Judge |
| **PULASKI COUNTY** | ) | |
| **BOARD OF SUPERVISORS,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff, Meridian Waste Virginia, LLC., d/b/a Meridian Waste Solutions ("Meridian") brings this declaratory judgment action challenging the Pulaski County waste control ordinances which give the Pulaski County Public Service Authority ("PSA") the exclusive right to collect solid waste in the County. Before me is the Rule 12(b)(6) motion to dismiss filed by Defendants (Dkt. 8). For the reasons stated below, I **GRANT** the motion to dismiss Meridian's action for declaratory judgment and accordingly **DENY** Defendants' Motion for Preliminary Injunction (Dkt. 22) as moot.

**I.    Background**

Meridian is a full-service waste management company that serves commercial and industrial customers in Pulaski County. It has conducted business in Pulaski County since 2018

---

[1] Plaintiff named Pulaski Service Authority when it filed this action. The correct name of this defendant is the Pulaski County Public Service Authority.

when it acquired the portfolio of customers from New River Container and Bob's Refuse Service which Meridian alleges had been operating and collecting refuse from commercial and industrial customers in Pulaski County for ten years. Meridian has been collecting solid waste for its customers and averaging $907,674.34 in annual revenue since it began operations in the County.

Two Pulaski County ordinances lie at the center of this dispute. The first is a 1979 ordinance regulating the collection and storage of trash in the County which the Board of Supervisors passed "to protect the health and safety of the people of Pulaski County," and to control the storage, collection, and disposal of refuse in the County. The 1979 Ordinance required "the owner or occupant of each dwelling, commercial or industrial establishment in the County to subscribe to [the PSA collection service]." Section 4 of the 1979 Ordinance gave the PSA the exclusive authority to collect or dispose of refuse in the County making it unlawful for "any person to engage in the business of refuse collection or refuse disposal for compensation . . . without consent of the PSA."

Pulaski County passed a second ordinance in 1997 reaffirming the PSA as the exclusive authority to collect and dispose of refuse in the County. The 1997 Ordinance provides in pertinent part as follows:

> Be it ordained that the Board of Supervisors of Pulaski County, Virginia, after public hearing as required by statute and in order to regulate the pick-up or disposal of garbage, trash or refuse, within the County of Pulaski, Virginia, does hereby reaffirm the declaration of the Board of Supervisors of Pulaski County, Virginia, previously made, that the Pulaski County Public Service Authority shall be the sole entity authorized to engage in the pick-up of garbage, trash or refuse within Pulaski County, Virginia. The Pulaski County Service Authority shall pay to the County the sum of ONE HUNDRED DOLLARS ($100.00) per year, payable on or about the 1st day of December each year as a license tax for such right.

Meridian has operated in Pulaski County since 2018 collecting commercial and industrial refuse without the permission of the PSA. On November 1, 2022, the PSA notified Meridian that

its operations violated the County ordinances which gave the PSA the exclusive right to collect and dispose of waste in the County and demanded that Meridian cease solid waste collections from businesses in the County. Meridian resisted the request to stop collecting waste from its customers contending that the 1979 Ordinance does not grant the PSA sole authority to collect solid waste in the County, that the 1979 Ordinance created a carve-out for certain industrial and commercial products, and that the County failed to give notice to any displaced private company before enacting either ordinance as required by Va. Code § 15.2-930(B). [2] Meridian filed this action on June 2, 2023, seeking declaratory relief against the PSA and the Pulaski County Board of Supervisors that its actions did not violate the existing Pulaski County ordinances or that the County did not properly pass the ordinances. The PSA has filed a Motion to Dismiss Meridian's complaint and a Motion for Preliminary Injunction to prevent Meridian from continuing to operate in Pulaski County.

## II.     Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). I accept all factual allegations in the complaint as true and draw all reasonable

---

[2] Va. Code Ann. § 15.2-930(B) requires that prior to enacting an ordinance that creates an exclusive service in waste management, the governing body must: "(i) hold at least one public hearing seeking comment on the advisability of such ordinance; (ii) provide at least forty-five days' written notice of the hearing, delivered by first class mail to all private companies which provide the service in the locality and which the locality is able to identify through local government records; and (iii) provide public notice of the hearing." § 15.2-930 further provides that a governing body may enact such an ordinance "if the ordinance provides that private companies will not be displaced until five years after its passage" or alternatively "a governing body may pay a company an amount equal to the company's preceding twelve months' gross receipts for the displaced service in the displacement area."

inferences in Meridian's favor as the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions, however, are not entitled to the same presumption of truth. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556 (noting that while detailed factual allegations are not required, a plaintiff must still provide more than labels, conclusions, or a "formulaic recitation of the elements of the cause of action").

### III. Analysis

#### a. The 1979 Ordinance

The PSA contends that the 1979 Ordinance gives it the sole authority to collect, haul, and dispose of solid waste in Pulaski County and that Meridian may not collect and dispose of refuse in the County without PSA permission. Dkt. 9 at p. 6. Further, the PSA contends that the 1997 Ordinance did nothing more than reaffirm the PSA as the sole entity authorized for trash collection and disposal in the County.

The plain language of the 1979 Ordinance confirms the PSA's position. Section 4(a) states: "It shall be unlawful for any person to engage in the business of refuse collection or refuse disposal for compensation in the COUNTY OF PULASKI without the consent of the PULASKI COUNTY PUBLIC SERVICE AUTHORITY." Sections 7 and 8 list the acceptable and unacceptable items for collection and section 10, importantly, outlines the broad reach of the ordinance as follows:

> The PULASKI COUNTY PUBLIC SERVICE AUTHORITY shall collect all refuse acceptable for collection, as provided in Section 7 of this Ordinance, from all single-family dwellings and from all multi-family or apartment dwellings and from industrial and commercial businesses located within the County of Pulaski.

The 1997 Ordinance does not alter the scope or breadth of the 1979 Ordinance.

Meridian contends that the 1979 Ordinance specifically excluded certain items from coverage of the PSA and thus other entities such as Meridian may collect these items from industrial customers in the County without the PSA's permission. Specifically, section 8 states:

> The following refuse shall be considered to be <u>not acceptable</u> for collection by the PULASKI COUNTY PUBLIC SERVICE AUTHORITY:
>
> (a) dangerous materials or substances, such as poisons, acids, caustics, infected materials, and explosives.
>
> (b) unusual quantities of materials resulting from the repair, excavation, or construction of buildings or structures, such as earth, plaster, mortar, and roofing material.
>
> (c) materials which have not been prepared for collection in accordance with these regulations.
>
> (d) the solid wastes resulting from industrial processes.

Statutory rules of construction apply with equal force to ordinances. *Herrington v. City of Va. Beach*, 839 S.E.2d 118, 121 (Va. Ct. App. 2020). When construing a statute, "the general rule . . . is to infer the legislature's intent from the plain meaning of the language used," *Hubbard v. Henrico Ltd. P'ship*, 497 S.E.2d 335, 338 (Va. 1998), and to "'apply the plain meaning . . . unless the terms are ambiguous or applying the language would lead to an absurd result.'" *Baker v. Commonwealth*, 733 S.E.2d 642, 644 (Va. 2012) (quoting *Boynton v. Kilgore*, 633 S.E.2d 922, 926 (Va. 2006)). When the statute is unambiguous, "consideration of the entire statute . . . to place its terms in context to ascertain the plain meaning does not offend the rule because 'it is our duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal.'" *Eberhardt v. Fairfax Cnty. Emp.' Ret. Sys. Bd. Of Tr.*, 721 S.E.2d 524, 526 (Va. 2012) (quoting *Virginia Elec. & Power Co. v. Bd. of Cnty. Sup'rs.*, 309 S.E.2d 308, 311 (Va. 1983)). Consistent with this duty, "the Court 'will look to the whole body of [a statute] to determine the true intention of each part.'" *Oraee v. Breeding*, 621 S.E.2d 48, 52

5

(Va. 2005) (quoting *McDaniel v. Commonwealth*, 99 S.E.2d 623, 627 (Va. 1957)); *see Eberhardt*, 721 S.E.2d at 526 ("'[a] statute is not to be construed by singling out a particular phrase'") (quoting *Virginia Elec. & Power Co.*, 309 S.E.2d at 311).

As a threshold matter, I find that the 1979 Ordinance is unambiguous, so the plain language of the statute controls unless applying the plain language would lead to an absurd result. *See Baker*, 733 S.E.2d at 644. Under Meridian's reading of the statute, however, the question becomes whether section 8 of the 1979 Ordinance creates an exception to this general grant of exclusive authority to the PSA made in section 4. I find that it does not.

Section 8 indeed provides exceptions to the refuse items the PSA may collect. But it does not follow that these items are excluded from the clear general prohibition against hauling waste by other companies in section 4. On the contrary, it is black letter law that "exceptions [and] exemptions . . . although facially unambiguous in themselves, are inherently inconsistent with the spirit of the statute of which they are apart," *Virginia Elec. & Power Co.*, 309 S.E.2d at 311, and that "the purpose for which a statute is enacted is of primary importance in interpretation or construction." *Norfolk So. Ry. Co. v. Lassiter*, 68 S.E.2d 641, 643 (Va. 1952).

Here, the purpose of the 1979 Ordinance is readily apparent from the plain language of the ordinance as a whole which shows the proper scope of section 8. First, the broad language of the prohibition in section 4 against private hauling applies with full force to the entire ordinance, including to the scope of the exception in section 8. If Pulaski County intended an "industrial carve-out" like Meridian suggests, it would have expressly limited section 4 to make clear that the excepted items in section 8 were not included in the broad prohibition against private hauling. *See United States v. Frank*, 8 F.4th 320, 327 (4th Cir. 2021) (noting that the legislature's "use of a 'notwithstanding' clause 'clearly signals the drafter's intention that the provisions of

6

the "notwithstanding" section override conflicting provisions of any other section.'") (quoting *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993)).

Second, the broad prohibition in section 4 against refuse collection in the County is qualified by the language "without the consent of the [PSA]." Section 4 is titled "Permits" which shows that the ordinance outlines the items the PSA will collect (section 7), those items it will not collect (section 8) and the customers it serves (section 10). Other persons (or businesses) seeking to "engage in the business of refuse collection or refuse disposal for compensation in the County of Pulaski" may do so with the consent of the PSA.

Lastly, I reject Meridian's argument that reading the statute in this way leads to an absurd result. In essence, Meridian argues that the PSA will only haul the waste listed in section 7 and that no entity will haul the prohibited items in Section 8 unless there is an industrial "carve-out" allowing entities such as Meridian to haul from industrial consumers. Meridian suggests this would create an internally inconsistent ordinance incapable of operation. *See Boynton*, 623 S.E.2d at 925 n.9 (describing an "absurd result" as situations where the law would be internally consistent or incapable of operation) (citation omitted).

Meridian's argument ignores, however, that the PSA may grant consent to private haulers to collect and dispose of the type of waste enumerated in section 8. Thus, "it is entirely possible to carry out the law as written in unambiguous terms in a manner consistent with the [legislature's] apparent intent." *Cook v. Commonwealth*, 597 S.E.2d, 87 (Va. 2004). The fact that the PSA may withhold their consent from some or all private haulers does not change the analysis. *See id.* (stating that it is not the place of the court to ignore the plain meaning of statute even if the result appears unwise).

    b. **1997 Ordinance**

Pulaski County adopted the 1997 Ordinance "to regulate the pick-up or disposal of garbage, trash or refuse within the County of Pulaski." The Ordinance states that it expressly "reaffirms the declaration of the Board of Supervisors of Pulaski County, Virginia, previously made, that the Pulaski County Public Service Authority shall be the sole entity authorized to engage in the pick-up of garbage, trash, or refuse within Pulaski County, Virginia." Finally, the County restated the right of the PSA "to contract with other persons or entities to pick-up garbage, trash, or refuse . . . on behalf of the Pulaski County Public Service Authority."

Meridian contends that Pulaski County did not properly enact the 1997 Ordinance because it did not comply with the requirements of Va. Code § 15.2-930 which requires that prior to enacting an ordinance that creates an exclusive service in waste management, the governing body must:

> (i) hold at least one public hearing seeking comment on the advisability of such ordinance; (ii) provide at least forty-five days' written notice of the hearing, delivered by first class mail to all private companies which provide the service in the locality and which the locality is able to identify through local government records; and (iii) provide public notice of the hearing.

Va. Code Ann. § 15.2-930 (2023). The plain language of the statute dispenses with this argument. The 1997 Ordinance did not "create an exclusive service in waste management." Rather, the ordinance reaffirmed the existence of the PSA and its exclusive authority established in 1979. Indeed, nothing Pulaski County did in the 1997 Ordinance repealed or replaced the 1979 Ordinance, the creation of the PSA, or the waste management regulations.

The Virginia General Assembly amended the predecessor statute to § 15.2-930 in 1995 to require a governing body to hold a public hearing and provide notice to private companies in the locality affected before creating an exclusive waste management authority.[3] Before then, a

---

[3] The General Assembly amended § 15.1-28.1 which became § 15.2-930 in 1997 when the Code was amended. 1997 Va. Acts Ch. 587.

8

locality had no statutory duty prior to creating an exclusive service in waste management such as the PSA to provide any notice to existing waste hauling businesses or to hold a public hearing. Necessarily, the notice and public hearing requirements which Meridian seeks to impose on Pulaski County did not exist when it created the PSA in 1979.

The PSA notes that the relevant language in Va. Code § 15.2-930(B)—requiring written notice of a public hearing to private companies that might be displaced and a five-year grace period or statutorily prescribed compensation—did not exist until 1995 and was not meant to apply retroactively. *Street v. Commonwealth*, 876 S.E.2d 202, 206 (Va. App. 2022) ("A statute is retroactive only if the legislature includes an express provision or other clear language indicating it applies retroactively") (cleaned up).

Further, the PSA argues that the 1997 Ordinance merely reaffirmed the 1979 Ordinance; so, even if the 1997 Ordinance is declared invalid, Meridian is not entitled to its requested relief because the 1979 Ordinance remains. The PSA argues that the validity of the 1997 Ordinance does not create an actual and justiciable controversy since Meridian, through its Memorandum in Opposition, seemingly agrees that the 1997 Ordinance did not change the scope of the 1979 Ordinance. Dkt. 17 at pp. 3–4.

Meridian counters that the 1979 Ordinance carved-out certain items from the scope of the PSA's exclusive authority, including solid waste from industrial processes and other items "not acceptable for [the PSA's] collection." Dkt. 14 at pp. 8–9. Meridian agrees that the 1997 Ordinance did not alter, amend, repeal, or replace the 1979 Ordinance, which means that the 1979 Ordinance's carve-out provisions are still in effect. *Id.* at pp. 9–10. Alternatively, Meridian argues that to the extent that the 1997 Ordinance sought to displace private haulers, the Board

9

did not comply with Va. Code § 15.2-930(B), thus violating Dillon's Rule[4] and rendering the Ordinance *ultra vires* and void *ab initio*. *Id.* at pp. 6–8. Meridian claims that the 1979 Ordinance also violates the current statutory scheme. *Id.* at p. 8.

I find that the 1979 Ordinance required Meridian to obtain the PSA's permission before it could lawfully haul waste in Pulaski County. Moreover, I need not decide whether the 1997 Ordinance was properly enacted. The 1997 Ordinance states in relevant part:

> the Board of Supervisors of Pulaski County, Virginia . . . does hereby reaffirm the declaration of the Board of Supervisors of Pulaski County, Virginia, previously made, that the Pulaski County Public Service Authority shall be the sole entity authorized to engage in the pick-up of garbage, trash or refuse within Pulaski County, Virginia.

There is no dispute that the "declaration" being reaffirmed is the 1979 Ordinance. A plain reading of the 1997 Ordinance shows that it solely reaffirms the 1979 Ordinance—it did not replace or alter it, and the 1979 Ordinance remains in force. Thus, I need not decide whether the 1997 Ordinance was properly enacted, as regardless of the validity of the 1997 Ordinance, the case turns on the validity and substance of the 1979 Ordinance.

### c. The 1979 Ordinance is Valid and Grants the PSA the Exclusive Authority to Collect Solid Waste in Pulaski County.

Meridian correctly points out that under Dillon's rule, a local ordinance that violates state law is void *ab initio*. "Municipal corporations have only those powers expressly granted by statute, those necessarily implied therefrom, and those that are essential and indispensable to the exercise of those expressly granted." *Advanced Towing Co., LLC v. Bd. of Supervisors*, 694 S.E.2d 621, 624 (Va. 2010). Ordinances exceeding their scope of authority are invalid. *Bd. of*

---

[4] "Dillon's Rule . . . provides that local governing bodies . . . have only those powers that are (1) expressly granted by the General Assembly, (2) necessarily or fairly implied from those express powers, and (3) essential to the declared objects and purposes of the municipality." *Dumfried-Triangle Rescue Squad, Inc. v. Bd. of. Cnty. Supervisors of Prince William Cnty.*, 849 S.E.2d 117, 120 (Va. 2020) (cleaned up).

*Supervisors v. Countryside Inv. Co.*, 522 S.E.2d 610, 612–13 (Va. 1997). Here, Meridian asks the Court to find that "the 1997 Waste Control Ordinance (*and all proceeding ordinances*) enacted by Pulaski County were enacted contrary to the requirements set forth in Va. Code Ann. § 15.2-930(B)," thus violating Dillon's rule. Dkt. 18 (emphasis added). Yet the General Assembly amended Va. Code § 15.1-28.1 (the predecessor to § 15.2-930) in 1995 to require for the first time that a locality creating an exclusive waste management authority provide notice to private companies that might be displaced by the new authority. Therefore, under Meridian's argument, Dillon's rule is implicated with respect to the 1979 Ordinance only if § 15.2-930 or its predecessor statute operate retroactively.

The General Assembly gave no indication when it amended § 15.1-28.1 in 1995 that it intended the statute to have retroactive effect. A core principle of statutory interpretation is that "interpreting a law to apply retroactively is 'not favored, and . . . a statute is always construed to operate prospectively unless a contrary legislative intent is manifest.'" *McCarthy v. Commonwealth*, 864 S.E.2d 577, 585 (Va. Ct. App. 2021) (quoting *Berner v. Mills*, 579 S.E.2d 159, 161 (Va. 2003)); *see also Booth v. Booth*, 371 S.E.2d 569, 571 (Va. Ct. App. 1988) ("[T]he general rule of statutory construction is that legislation only speaks prospectively."). "Every reasonable doubt is resolved against a retroactive operation of a statute, and words of a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them. . . ." *Shilling v. Commonwealth*, 359 S.E.2d 311, 315 (Va. Ct. App. 1987) (citing Michie's Jurisprudence *Statutes* § 73 (1979)). Because I cannot identify, and Meridian does not point to, any language in Va. Code § 15.2-930(B) or its predecessor statute indicating an intent that the requirements of the statute were to have

11

retroactive effect, the statutes must be construed to operate prospectively. *See McCarthy*, 73 Va. App. at 647.

Accordingly, Meridian's claim that the 1979 Ordinance violates the requirements of Va. Code § 15.2-930(B) fails because those requirements only apply to ordinances enacted after the statute became law in 1995.

### d. The Court Does Not Consider Claims That Meridian Raises for the First Time in Their Memorandum in Opposition.

For the first time, Meridian claims in their Memorandum in Opposition that the Defendants' conduct—attempting to displace Meridian's business operations from Pulaski County—constitutes a taking under the Virginia Constitution if they are not afforded the requested relief. Dkt. 14 at pp. 10–11. However, district courts in Virginia have refused to allow plaintiffs to unilaterally amend their complaint in response to a motion to dismiss. *See e.g.*, *Marsh v. Virginia Dept. of Transp.*, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3,2014) (citing *Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989)). I decline to change course today.

### IV. Conclusion

For the foregoing reasons, I hereby **GRANT** the Defendants' Motion to Dismiss. Plaintiff's Amended Complaint (Dkt. 18) is **DISMISSED WITH PREJUDICE**. Accordingly, Defendant's Motion for Preliminary Injunction is **DENIED** as moot.

Entered: March 29, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge